Foster **DANIELS**, Plaintiff,

v.

The **CITY OF BINGHAMTON**; Richard A. Bucci, Mayor; Joseph T. Zikuski; Terrance Heslin; Michael Talbut; Martin Burnett; Dennis Gorman, Officer; Joseph D. Lynch, Police Chief, Defendants.

No. 95–CV–688.

United States District Court, N.D. New York.

Nov. 20, 1996.

Foster Daniels, Binghamton, NY, Pro Se.

Robert C. Murphy, City of Binghamton, Corporation Counsel, Binghamton, NY (Catherine C. Schaewe, Asst. Corporation Counsel, of counsel), for defendants.

## MEMORANDUM DECISION & ORDER

McAVOY, Chief Judge.

This civil rights action arises out of an incident that occurred on February 20, 1994 involving plaintiff, his daughter, several civilians and five off-duty City of Binghamton police officers. Defendants now move, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief may be granted, or in the alternative, for summary judgment dismissing the Complaint pursuant to Fed.R.Civ.P. 56(c).

## I. BACKGROUND

### A. Summary of Facts:

The Amended Complaint alleges a series of events that occurred on February 20, 1994. Since the instant motion is based upon Fed. R.Civ.P. 12(b)(6), these allegations are accepted as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The following are the events alleged in the Amended Complaint:

At approximately 10:30 p.m. on the evening of February 20, 1994, in the City of Binghamton, New York, defendants Joseph Zikuski ("Zikuski"), Michael Talbut ("Talbut"), Terrance Heslin ("Heslin"), Dennis Gorman ("Gorman") and Martin Burnett ("Burnett"), while under the influence of alcohol, failed to detain Kevin Giblin ("Giblin"), who was verbally abusing plaintiff's daughter by way of racial epithets in front of her home at 194 Main Street. (Am.Compl. ¶ II(A)(1)). When the defendant officers arrived at the scene, they failed to disperse a crowd that had gathered and further failed to identify themselves as police officers. (Am.Compl. ¶ II(A)(2)). Defendant officers additionally allowed a civilian, Timothy Reardon ("Reardon") to make an aggressive action toward plaintiff, who was forced to lash out in self-defense. (Am.Compl. ¶ II(A)(3)). Defendant officers then trespassed onto plaintiff's property and used excessive force to effect an illegal seizure, inciting a riot. (Am.Compl. ¶ II(A)(4)).

Zikuski then conspired to cover these illegal actions by informing arriving on-duty officers of his version of the incident, thereby "inflaming their passions to protect fellow officers in distress." (Am.Compl. ¶ II(A)(5)). Plaintiff does not specify with whom Zikuski conspired.

While inside the apartment effecting plaintiff's arrest, Zikuski assaulted plaintiff while saying "So you think you're so tough." (Am. Compl. ¶ II(A)(6)). Plaintiff contends that this assault amounted to an excessive use of force, "sadistically used for the purpose of causing harm." (Am.Compl. ¶ II(A)(6)).

After his arrest, plaintiff was taken to the police station, where he was handcuffed to a rail in a hallway for several hours while awaiting booking. (Am.Compl. ¶ II(A)(7)). Plaintiff was never medically examined for any injuries although defendants knew he was a diabetic. Upon returning to the police station, defendants conspired to conceal their illegal acts by omitting certain facts regarding the incident. The source or document from which they omitted these facts is not specified.

Plaintiff contends defendant Joseph Lynch ("Lynch") violated his constitutional rights because of Lynch's "nonchalant attitude relative to the situation." Plaintiff seems to contend that certain remarks Lynch made to the press about the defendant officers' alleged intoxication at the time of the incident, and his failure to reprimand Zikuski for his "admitted violation of DWI laws," comprise "deliberate indifference" to plaintiff's rights. (Am.Compl. ¶ II(B)). Plaintiff also alleges that Lynch took part in a conspiracy to effect the promotion of Zikuski to Assistant Police Chief. (Am.Compl. ¶ II(B)).

As to defendants City of Binghamton ("the City") and Mayor Richard Bucci ("Bucci"), plaintiff alleges these defendants failed to properly train the other defendants and other personnel, resulting in plaintiff being ille-

gally deprived of his liberty for four days in the Broome County Jail. (Am.Compl. ¶ II(C), II(C)(1)). This allegation is based upon plaintiff's contention that someone wrongly recorded the time of his arrest, resulting in his being "unduly incarcerated through Christmas 1994 and to be away from his only child any family in this area." (Am. Compl. ¶ II(C)(1)). Plaintiff also alleges that the City is liable for failure to train the defendant officers "to handle themselves in an objective fashion due to their state of intoxication." (Am.Compl. ¶ II(C)(2)).

Finally, plaintiff alleges that Bucci should have called for an independent investigation of the incident, and that the City has a practice of failing to adequately investigate situations involving the minority community. (Am.Compl. ¶ II(D)). Plaintiff also alleges that the City failed to discipline the defendant officers. (Am.Compl. ¶ II(D)).

### B. Procedural History:

*Pro se* plaintiff Foster Daniels brought this action on May 19, 1995, alleging civil rights violations under 42 U.S.C. §§ 1983, 1985 and 1986. All defendants appeared by way of answer filed July 5, 1995. Plaintiff filed an Amended Complaint on December 29, 1995, alleging violations of his Fourth, Eighth, and Fourteenth Amendment rights under the United States Constitution, and seeking five million dollars in compensatory and two million dollars in punitive damages. Defendants filed their Amended Answer on June 13, 1996, consisting of denials, several affirmative defenses, and three counterclaims for attorneys' fees and damages allegedly sustained by the various defendants. Defendants now move, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief may be granted, or in the alternative, for summary judgment dismissing the Complaint pursuant to Fed.R.Civ.P. 56(c).

The Court notes that insofar as the defendants' motion is for summary judgment under Fed.R.Civ.P. 56(c), it is seriously deficient. Defendants' Local Rule 7.1(f) statement, which should consist of a "short and concise statement of the material facts as to which the moving party contends there is no genuine issue," merely consists of a summary of the arguments relied upon in their motion to dismiss for failure to state a claim. Thus, the defendants have not made it clear upon what undisputed issues of fact they rely for their summary judgment motion. Furthermore, the affidavits submitted in support of the summary judgment motion, except that of defendant Zikuski, consist largely of legal arguments and purported legal insufficiencies regarding plaintiff's Amended Complaint. The Court refers defendants to Fed. R.Civ.P. 56(e), which states that "supporting and opposing affidavits shall be made on *personal knowledge,* shall set forth such *facts* as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (emphasis added). Local Rule 7.1(c)(1) states that "[a]n affidavit *shall not contain legal arguments,* but shall contain *factual* and procedural background as appropriate for the motion being made." (emphasis added). A large part of the affidavits submitted on this motion clearly do not comport with these requirements.

Local Rule 7.1(f) provides that a motion for summary judgment "shall be denied if the moving party fails to file and serve the statement required by this paragraph." Because of defendants failure to submit a proper Rule 7.1(f) statement, and because of the deficiencies in the affidavits, the Court denies the defendants' motion for summary judgment, without prejudice. The present motion will thus be treated only as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

## II. DISCUSSION

### A. Standard for a Motion to Dismiss:

#### 1. Dismissal under Rule 12(b)(6):

Plaintiff's Amended Complaint may be construed as alleging a cause of action under 42 U.S.C. § 1983, which requires that the plaintiff make two allegations: (1) that some person has violated the plaintiff's protected rights under the U.S. Constitution or federal law; and, (2) that the person who allegedly violated such rights acted under color of state law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68

L.Ed.2d 420 (1981); *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). When examining a suit brought under § 1983 it is the duty of the court to examine whether plaintiff has alleged sufficient facts which, if proved, would comprise an actionable deprivation of a federal right. *Robinson v. Mount Vernon*, 654 F.Supp. 170, 172 (S.D.N.Y.1987). The court should not dismiss on a Rule 12(b)(6) motion unless it appears clear that the plaintiff cannot in any way establish a set of facts to sustain his claim which would permit relief. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980); *Bass v. Jackson*, 790 F.2d 260, 262 (2d Cir.1986).

■ In determining the legal sufficiency of a claim, the facts must be judged in the light most favorable to the plaintiffs. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The court notes with emphasis its obligation to afford plaintiff every favorable inference arising from his *pro se* status, as well as from his position as non-movant on this motion to dismiss. To be sure, because *pro se* plaintiffs are often unfamiliar with the formalities of pleading requirements, "the Supreme Court has instructed the district courts to construe *pro se* complaints liberally and to apply a more flexible standard in determining the sufficiency of a *pro se* complaint than they would in reviewing a pleading submitted by counsel." *Platsky v. CIA*, 953 F.2d 26, 28 (2d Cir.1991) (citing *Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (per curiam)); *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam).

Consequently, plaintiff's complaint should not be dismissed for failure to state a claim unless it appears, beyond doubt, that he can prove no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984), *cert. denied* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985); *Wanamaker v. Columbian Rope Co.*, 740 F.Supp. 127 (N.D.N.Y. 1990). With this standard in mind, the court proceeds to determine whether plaintiff has stated a cause of action under 42 U.S.C. § 1983.

**B. The Sufficiency of Plaintiff's § 1983 Claims as Against These Defendants:**

Defendants first argue that the Complaint should be dismissed in its entirety against all defendants because it fails to state a cause of action on its face. Defendants contend that the amended Complaint consists of nothing more than "conclusory, vague and general allegations," the "vague and unspecified injury of emotional distress," and further that the Complaint fails to plead any causal connection between these unspecified injuries and the incident at issue.

To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that a person acting under color of state law deprived plaintiff of a right, privilege, or immunity secured by the United States Constitution or the laws of the United States. *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). "By the plain terms of § 1983, two—any only two—allegations are required in order to state a cause of action under that statute. First, plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980); *Costello v. Town of Fairfield*, 811 F.2d 782 (2d Cir.1987).

The amended Complaint essentially may be separated into three parts: first, allegations of excessive force, illegal entry, conspiracy to conceal illegal acts, and due process violations against the defendant off-duty police officers involving the events of the evening of February 20, 1994; second, allegations of due process violations and deliberate indifference to plaintiff's rights against Lynch, as well as an allegation that Lynch took part in a "conspiracy" to promote Zikuski; third, allegations of failure to properly train the defendant police officers, and fail-

ure of Bucci to adequately investigate the incident, as per a practice of the City of failing adequately to investigate incidents involving the minority community. The Court will now address these sections seriatim.

### 1. Allegations against Defendant Police Officers

■ With respect to the allegation is paragraph II(A)(1), plaintiff clearly does not have standing to assert the constitutional rights of his daughter, who is not a named plaintiff. A plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *see Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Nor do allegations II(A)(2)–(3) state a claim, since the defendants' "fail[ure] to disperse a gathering crowd" and "fail[ure] to maintain order" can in no way be construed as a violation of plaintiff's constitutional rights. Plaintiff's citations in his brief to New York State statutes and case law regarding unlawful assembly, rioting, and inciting to riot are unavailing, since it is well-established that § 1983 does not provide a remedy for official conduct that violates only state law. *See generally Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

■ Furthermore, plaintiff's allegations that the defendant police officers, by their omissions, "enhanced the risk of harm being done to plaintiff," and "allowed a civilian ... to make an aggressive action toward plaintiff" do not amount to constitutional violations, since "the constitution is a charter of negative liberties ... it does not require ... the state to provide services, even so elementary a service as maintaining law and order." *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982); *see also McClary v. O'Hare,* 786 F.2d 83, 88 (2d Cir.1986) (constitutional violation generally not found where member of public harmed as result of government official's failure to act).

■ Paragraph II(A)(4) simply states that "[d]efendants then trespassed on prop-

erty and used excessive force to force an illegal seizure." This conclusory allegation fails to state a claim of a Fourth Amendment violation. While the federal courts are prohibited from applying a "heightened pleadings standard" to certain § 1983 cases, *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), complaints based on civil rights statutes must nonetheless include specific allegations of facts showing a violation of rights "instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987). Allegations which are merely broad, simple and conclusory statements fail to state a claim under § 1983. *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987). While the allegations in paragraph II(A)(4) may state a Fourth Amendment violation in form, they fail to do so in substance, since they "consist[ ] of nothing more than naked assertions, and set[ ] forth no facts upon which a court could find a violation of the Civil Rights Acts ..." *Martin v. N.Y. State Dept. of Mental Hygiene,* 588 F.2d 371 (2d Cir.1978) (per curiam).

■ Paragraph II(A)(2) of the Complaint alleges that, "[h]aving gained forcible entry into the plaintiff's apartment and handcuffing plaintiff, defendant Zikuski did stand over and physically assault plaintiff ... this use of force was excessive ...". Here, the allegations are somewhat more factual, specifying that Zikuski assaulted plaintiff during the course of his arrest. Furthermore, the Complaint may be construed as alleging that Zikuski was acting under color of law. "More is required than a simple determination as to whether an officer was on or off duty when the challenged incident occurred." *Pitchell v. Callan,* 13 F.3d 545, 548 (2d Cir. 1994). Actions will be taken under color of law, where, as here, a police officer performs the duties generally prescribed for him. *Id.; see also Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975). Plainly, where a police officer is alleged to have used excessive force during the course of an arrest, that action can be said to have been taken under color of law. *Cf. Bonsignore v. City of New York,* 683 F.2d

635, 639 (2d Cir.1982) (off duty policeman who shot his wife then turned gun on himself not acting under color of law since actions were not "committed in the performance of any actual or pretended duty.").

 In addition, while plaintiff generally alleges Fourth, Eighth, and Fourteenth Amendment violations in the first paragraph of the Complaint, the Court reads the allegations in paragraph II(A)(2) as asserting that Zikuski violated plaintiff's Fourth Amendment rights. "[A]ll claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard ...". *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). "In determining whether the force used to effect a particular seizure is reasonable, a court must evaluate the particular circumstances of each case." *Soares v. Connecticut,* 8 F.3d 917, 921 (2d Cir.1993). Defendants argue that plaintiff fails to state claim of excessive force in part because he has pleaded no resulting injury other than "emotional distress." The fact that a plaintiff's injuries are not severe, or are relatively minor, however, does not foreclose an excessive force claim. *See Robison v. Via,* 821 F.2d 913, 924 (2d Cir.1987); *Smith v. Yonkers Police Dept.,* 1995 WL 489461 *3 (S.D.N.Y.1995); *see also Davis v. Patrick,* 1992 WL 183729 *3 (S.D.N.Y.1992) ("notwithstanding the relative insignificance of the physical injuries sustained by Plaintiff, these allegations suffice to state a claim under the liberal pleading standards applicable to *pro se* plaintiffs under Section 1983."). "The inquiry into whether the force used was reasonable is a factual one, and the Court cannot say in the context of a motion to dismiss, as a matter of law that plaintiff could prove no set of facts to sustain [this] claim." *Id.* Construing the Complaint liberally in plaintiff's favor, then, the Court finds that plaintiff has stated a claim in paragraph II(A)(2) for a violation of his Fourth Amendment rights by Zikuski under color of state law

 Plaintiff's last two allegations under paragraph II(A) state no claims of consti-

tutional violations. With respect to paragraph II(A)(7), plaintiff alleges that he was not examined for injuries at the police station despite that fact that he was a diabetic. Since plaintiff was no more than a pre-trial detainee at the time, his claim of failure to provide medical treatment must be analyzed under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 536 n. 16, 99 S.Ct. 1861, 1873 n. 16, 60 L.Ed.2d 447 (1979); *Ingraham v. Wright,* 430 U.S. 651, 671 & n. 40, 97 S.Ct. 1401, 1412 & n. 40, 51 L.Ed.2d 711 (1977).

> Although a pretrial detainee's due process rights to adequate medical treatment are least as great as the Eight Amendment protections available to prison inmates, the Supreme Court has left unresolved what standard applies. It remains unsettled, in other words, whether a pretrial detainee must meet the "deliberate indifference" standard of *Estelle [v. J.W. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ] or show 'gross negligence' or 'recklessness' or prove conduct not amounting to intentional acts, but that is more than simple negligence to state a claim of a constitutional deprivation under the Due Process Clause.

*Bryant v. Maffucci,* 923 F.2d 979, 983 (2d Cir.) (citations omitted), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The Court need not address the proper standard to be applied, however, since plaintiff has not alleged that he even required or requested medical care in the first instance. Nor has plaintiff alleged that he was injured at the time, or that the lack of medical care exacerbated his injuries. Plaintiff merely asserts that he was diabetic, and that the defendants failed to examine him for injuries. These allegations are insufficient to meet even the liberal pleading requirements to which this plaintiff is held. Thus, plaintiff's claim for failure to provide medical care must be dismissed.

 With respect to plaintiff's allegations of a conspiracy in paragraphs II(A)(5) and II(A)(8), the Second Circuit has repeatedly held that complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitu-

tional rights will be dismissed. *Black v. United States,* 534 F.2d 524 (2d Cir.1976); *Koch v. Yunich,* 533 F.2d 80 (2d Cir.1976); *Fine v. City of New York,* 529 F.2d 70 (2d Cir.1975); *cf. Build of Buffalo, Inc. v. Sedita,* 441 F.2d 284 (2d Cir.1971). Diffuse and expansive allegations are insufficient unless amplified by specific instances of misconduct. *See Build of Buffalo v. Sedita,* 441 F.2d at 288; *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Unlike in *Build of Buffalo, supra,* the plaintiff here has not alleged any specific instances of conduct on the part of any of the defendants. Nor does plaintiff allege which of his constitutional rights were violated by the unspecified defendants' unspecified omissions. Thus, the allegations of a conspiracy in paragraphs II(A)(5) and II(A)(8) fail to state a claim.

### 2. Allegations Against Defendant Lynch

In paragraph II(B), plaintiff seems to allege that his due process rights were violated by Lynch's "deliberate indifference" to plaintiff's rights. Plaintiff argues that this indifference is further evidenced by Lynch's part "in the conspiracy to effect the promotion of Zikuski to Assistant Police Chief." Plaintiff in no way alleges, nor can the Court discern, which of *his* constitutional rights conceivably was violated as a result of either Lynch's statements to the media or by Zikuski's promotion. Therefore, these allegations fail to state a claim upon which relief may be granted.

### 3. Allegations Against the City and Bucci

Finally, plaintiff's claims of failure to train against Bucci and the City must fail. Plaintiff alleges that these defendants are liable for "an incorrect time of arrest given to the officer who was responsible for time calculations for the county ... [that] caused the plaintiff to be unduly incarcerated ...", and for "the failure of the officers to handle themselves in an objective fashion due to their state of intoxication." (Am.Compl. ¶ II(C)(1)–(2)). As set forth below, these allegations are insufficient to state a claim for municipal liability under § 1983.

A municipality and its supervisory officials may be held liable in a § 1983 action for the conduct of low-level employees only if the plaintiff shows that the alleged constitutional violation "resulted from a municipal custom or policy." *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 122 (2d Cir.1991); *see Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). "The inference that such a policy existed may arise from 'circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.'" *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) (quoting *Ricciuti,* 941 F.2d at 123). Plaintiff alleges only a failure to train on the part of the City and Bucci; he alleges no custom or policy with respect to the miscalculation of the date, or with respect to the officers' alleged intoxication.

> [T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy cause the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level will not suffice to raise an inference of the existence of a custom or policy.

*Dwares,* 985 F.2d at 100 (citations omitted).

Plaintiff *does* allege a custom or policy with respect to his final allegation regarding Bucci's failure to call for an independent investigation into the incident, and with respect to the City's failure to discipline the officers. Specifically, plaintiff alleges that

> the city has had a practice of failing to adequately investigate situations that involve the minority community and has failed to adequately discipline its officers, resultant [sic] in abusive governmental conduct, a violation of plaintiff's 14th amendment rights.

(Pl.Comp. ¶ II(D)). "The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, [the inference that such a

policy existed]." *Dwares,* 985 F.2d at 100; *see Batista v. Rodriguez,* 702 F.2d. 393, 397 (2d Cir.1983). Plaintiff's conclusory allegations here do not support the inference that such a policy or practice existed, and thus plaintiff's final claim must be dismissed.

## III. Conclusion:

In summary, the defendants' motion to dismiss with respect to those allegations contained in paragraph II(A)(6) of the Amended Complaint, as those allegations sound against defendant Zikuski only, is DENIED. The motion is GRANTED with respect to the remaining allegations in the Complaint as against all defendants. This dismissal is without prejudice.

**IT IS SO ORDERED.**