Jeremiah YOUNG–FLYNN, Plaintiff,

v.

Raymond KELLY, et al., Defendants.

No. 03 CIV. 6693.

United States District Court,
S.D. New York.

March 15, 2006.

Jeremiah Young Flynn, Attica, NY, pro se.

Michael Steven Chestnov, New York City Law Depart. Office of the Corporation Counsel, New York, NY, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

*Pro Se* plaintiff Jeremiah Young–Flynn ("Young–Flynn") originally commenced this action on September 4, 2003 by filing a com-

plaint alleging false arrest and false imprisonment and naming New York City Police Department ("NYPD") Commissioner Raymond Kelly ("Kelly"), a Patrolman Walsh ("Walsh"), the Desk Sergeant on duty at the NYPD Precinct where he was arrested (collectively "Defendants"), and an unnamed taxicab driver. Following a dismissal of his original complaint with leave to replead, Young–Flynn twice amended his complaint. Before the Court is Defendants' motion to dismiss the Second Amended Complaint. For the reasons stated below the motion is granted.

### I. FACTS

In essence, Young–Flynn alleges that on December 9, 2000 [1] he boarded a taxi on 65th Street in Queens, New York and asked the driver to take him to 65th Street and 53rd Avenue in Queens, a trip of about one-half mile. He then promptly fell asleep. Upon waking up, Young–Flynn noted that the cab was crossing the Queensborough Bridge toward Manhattan and asked the driver where he was heading. The driver responded that he was going to 65th Street and 5th Avenue. Young–Flynn asked the driver to stop. Instead, the driver locked the cab's doors and drove to the NYPD's 17th Precinct on 51st Street in Manhattan. There, two police officers ordered Young–Flynn to pay the fare. When he refused he was arrested and held in jail in Manhattan. Though scheduled to be released the following day, Young–Flynn asserts that he was instead transported by Walsh on December 10, 2000 to Central Booking at the Queens House of Detention. There, he was detained and then released that day or the following day. Young–Flynn states that he was not informed of the charges against him, although he later learned through an entry on his Rap Sheet that he had been accused of credit card fraud.

Young–Flynn's first complaint (the "Original Complaint") asserted claims of false ar-

1. The Original and First Amended Complaints state in several parts that the arrest occurred on December 9, 2003, and in others the date is given as December 9, 2000. The December 9, 2003 date was obviously inaccurate because the Original Complaint was filed on September 4, 2003. Moreover, Young–Flynn's Second Amended Complaint, filed on April 25, 2005, states the arrest date as December 9, 2000.

rest and false imprisonment, as well as violations of rights under the First, Fourth and Fourteenth Amendments of the United States Constitution. By Order dated September 4, 2003, Chief Judge Mukasey ruled that Young–Flynn's Original Complaint failed to allege any direct or personal involvement with, knowledge of or responsibility for the underlying incident on the part of Kelly, and that the balance of the complaint in the form stated could not sustain any claims cognizable under 42 U.S.C. § 1983. *See Young–Flynn v. Kelly,* No. 03 Civ. 6693, slip op. at 2, 3 (S.D.N.Y. Sept.4, 2003). In particular, Chief Judge Mukasey noted that although Young–Flynn stated that he was released two days after the incident, he "fails to allege that the charges against him were terminated in his favor." *Id.* at 2 (citing *Heck v. Humphrey,* 512 U.S. 477, 489–90, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) and *Cameron v. Fogarty,* 806 F.2d 380, 386–88 (2d Cir.1986)).

Accordingly, the Original Complaint was dismissed with leave to amend within 60 days. Young–Flynn was specifically instructed to describe what actually occurred in connection with the claims he asserted, and in particular what happened to the criminal charges against him and "what each individual defendant did or failed to do during the incident in question." *Id.* at 3. Moreover, the Court warned that if Young–Flynn failed to comply with the Order within the time allowed "the amended complaint will be dismissed." *Id.* at 4.

On October 30, 2003, Young–Flynn filed an amended complaint (the "First Amended Complaint") which named as defendants only Walsh and the "Sergeant of Patrol or Desk Sergeant of 17th Pct. 4–11 Shift." With minor exceptions, however, the factual allegations recited in the First Amended Complaint were materially the same as those described in the Original Complaint.

Young–Flynn proceeded to serve interrogatories on the Office of the New York City Corporation Counsel (the "Corporation Counsel") in June 2004 seeking the complete identity and location of Patrolman Walsh and the Desk Sergeant during the "4–11 shift" at the 17th Precinct who presumably were involved in his arrest.

On July 1, 2004 the Corporation Counsel informed the Court that no defendant had been served in the case and that Young–Flynn's correspondence submitting the interrogatories referred to constituted the first notice the City of New York had received of the filing of this action. The Court, by memo-endorsed Order dated July 2, 2004, advised Young–Flynn that failure to serve Defendants could be prejudicial to the continued prosecution of this action.

In response to an Order issued by the Court, the Corporation Counsel on behalf of Defendants informed Young–Flynn, by Interrogatories dated January 12, 2005, that the Desk Officer on duty at the 17th Precinct at the relevant time was a Sergeant Christopher Dantoni ("Dantoni") and that the officer who arrested Young–Flynn on December 9, 2000 was Stephen Reilley ("Reilley").

On April 25, 2005 Young–Flynn filed a Second Amended Complaint naming as defendants Kelly, Reilley and Dantoni, as well as the "Sergeant of Patrol or Desk Sergeant 3–11 Shift." The new complaint added references to an Eighth Amendment claim of deliberate indifference to Young–Flynn's medical needs relating to an alleged failure to provide him certain medical attention during his incarceration. In all other material respects the Second Amended Complaint contains the same recitation of events described in Young–Flynn's Original and First Amended Complaints. Contrary to the guidance in Chief Judge Mukasey's dismissal Order with respect to the Original Complaint, the amended pleadings contain no more detailed description regarding the extent of any direct or personal involvement by the individual defendants in the denials of constitutional rights Young–Flynn asserts, or about the disposition or status of the criminal charge for which Young–Flynn was arrested.

Defendants move to dismiss the Second Amended Complaint on the basis of the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), or alternatively for summary judgment pursuant to Rule 56. They assert several grounds: that (1) Young–Flynn's claims are barred by the statute of limitations applicable to actions

brought pursuant to 42 U.S.C. § 1983 (" § 1983"); (2) the Second Amended Complaint does not relate back to the filing of either the First Amended Complaint or the Original Complaint; (3) the complaints fail to allege any personal involvement by any of the Defendants in any of the violations of Constitutional rights Young–Flynn alleges; and (4) any state law claims asserted are barred by non-compliance with New York General Municipal Law §§ 50(e) and 50(i).

## II. *STANDARD OF REVIEW*

A motion under Rule 12(c) for judgment on the pleadings is evaluated under the same standard as one pursuant to Rule 12(b)(6) to dismiss the complaint for failure to state a claim. *See DeMuria v. Hawkes,* 328 F.3d 704, 706 n. 1 (2d Cir.2003) (citing *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003)). Thus, the Court must accept as true the factual allegations stated in the complaint and any document incorporated to it by reference or upon which it heavily relies in the formulation of the pleadings, as well as draw all reasonable inferences in plaintiff's favor. *See Schnall v. Marine Midland Bank,* 225 F.3d 263, 266 (2d Cir.2000) (citation omitted). The action may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004) (citation omitted). In the case of a *pro se* litigant, the Court is instructed to read the pleadings leniently and construe them " 'to raise the strongest arguments that they suggest.' " *See McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)).

## III. *DISCUSSION*

### A. *STATUTE OF LIMITATIONS*

The statute of limitations applicable to actions brought under § 1983, borrowed from the applicable state-law period for personal injury torts, is three years, and begins to run when the plaintiff knows or has reason to know of the injury which gave rise to the lawsuit. *See Sidney v. Wilson,* 228 F.R.D. 517, 519 (S.D.N.Y.2005) (citing *Ormiston v.*

*Nelson,* 117 F.3d 69, 71 (2d Cir.1997)). Here, Young–Flynn's action accrued on the date the alleged false arrest and imprisonment occurred: December 9, 2000. Therefore, his deadline for filing a § 1983 claim with regard to the underlying incidents was December 9, 2003. By the time Young–Flynn filed the First Amended Complaint on October 30, 2003, he had only about 40 days left before the limitations period to serve the defendants expired. Young–Flynn's First Amended Complaint, though filed within the statutory period, named as defendants Walsh and a then unknown desk sergeant at the 17th Precinct. Young–Flynn did not seek to serve any of the defendants until directed by the Court to do so in July 2004. He did not file the Second Amended Complaint, for the first time naming Reilley and Dantoni, until April 25, 2005. According to the Court's Docket Sheet for this action, Dantoni and Reilley were served on June 29, 2005. Based on these facts, the Court finds that Young–Flynn's § 1983 claims in this case are barred by the applicable statute of limitations.

The Court also finds that Young–Flynn's Second Amended Complaint does not satisfy the requirements of Federal Rule of Civil Procedure 15(c) ("Rule 15(c)") that permit amended pleadings to "relate back," for statute of limitations purposes, to the filing date of the original complaint in the underlying action. Rule 15(c) authorizes relation back in connection with newly added parties when:

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in

maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c).

■ As it pertains to a plaintiff's amending a complaint so as to add new parties, Rule 15(c) is thus predicated on several essential conditions: (1) the claim asserted in the amended pleadings must arise out of the same events recited in the original complaint; (2) the misidentification of a party by mistake in the original complaint; (3) notice to the new party, ordinarily within 120 days of the filing of the original complaint, about the commencement of the litigation; (4) by reason of such notice, no prejudice is caused to the new party in defending the action, and (5) the existence of actual or constructive knowledge on the part of the new party that the original action should have named him when filed. *See Soto v. Brooklyn Corr. Facility,* 80 F.3d 34, 35 (2d Cir.1996). Moreover, as the Second Circuit has noted, "even when a suit is brought by a *pro se* litigant, 'an amended complaint adding new defendants [cannot] relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.'" *Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (alteration in original) (quoting *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 470 (2d Cir.1995)). Amendments seeking to correct plaintiff's lack of knowledge about the identity of a proper party rather than mistake in fact or law do not satisfy the requirement of Rule 15(c) that the amendment be grounded on such mistake. *See Sidney,* 228 F.R.D. at 520 (noting that "Second Circuit doctrine as well as the Advisory Committee Notes counsel against interpreting ignorance of a party's name as a 'mistake' under Rule 15(c).")

The application of this doctrine was addressed by this Court in *Sidney,* a case that presents facts analogous to those at issue here and that the Court thus finds controlling. *See* 228 F.R.D. 517. In *Sidney,* plaintiff commenced an action on October 23, 2002 specifically citing as defendants one correction officer by name and another by job function or title in connection with injuries from alleged excessive force Sidney suffered from an incident that occurred on November 30, 1999. Sidney amended the complaint on July 11, 2003, after the expiration of the statute of limitations, adding two individual defendants, one of them named as the person referred to in the original complaint only as a "Gallery Officer" who participated in the assault, and the other referred to as an "Area Supervisor." The Court concluded that the omission of the added defendants' names from the original complaint "appears to have resulted from a lack of knowledge of their names, rather than [from] the sort of mistake contemplated by Rule 15(c)." *Id.* at 520.

■ In this case, the same analysis would govern the claims against Dantoni, who was referred to in the Original and Amended Complaints only as the Desk Patrol or Sergeant for the 17th Precinct shift in question.[2] The failure to name him in the Original Complaint was not grounded on Young–Flynn's mistake within the meaning of Rule 15(c), but on lack of knowledge of Dantoni's identity. Moreover, Dantoni did not receive notice of the action nor had he reason to know that he was the intended defendant within 120 days of the date that the Original Complaint was filed.

■ With regard to Reilley, though Young–Flynn's Original Complaint named Patrolman Walsh as one of the participants in the incident, it is clear that Young–Flynn intended to refer to the arresting officer and incorrectly named him as Walsh. Insofar as the true identity of the officer was Reilley rather than Walsh, the disparity may fall within the type of misnomer or name-correcting amendments contemplated by Rule 15(c). Nonetheless, the Second Amended Complaint fails to satisfy the requirement of Rule 15(c) that the new parties must be served, or otherwise provided adequate notice of the

---

**2.** The Court notes that even after the Corporation Counsel identified Dantoni as the desk officer, in the Second Amended Complaint Young–Flynn not only includes Dantoni by name but continues to make the same reference to the Desk or Patrol Sergeant on duty at the 17th Precinct during the 3–11 shift.

litigation, within 120 days of the First Amended Complaint, in this case February 27, 2004. Because the first notice of the claims against Reilley did not occur until the Second Amended Complaint was filed on April 25, 2005 and served on June 29, 2005, the amended pleadings cannot properly relate back to the First Amended Complaint under Rule 15(c).

■ With regard to Kelly, the Court notes that Chief Judge Mukasey's September 4, 2003 Order dismissing the action as to him continues to control. Judge Mukasey dismissed the Original Complaint's claims against Kelly because there is no vicarious liability in § 1983 actions. *See Young–Flynn* at 2; *see also Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.1995) (citation omitted). Young–Flynn has alleged no new facts suggesting any direct or personal involvement by Kelly in the events relating to his arrest. On this basis alone, the action against Kelly again warrants dismissal. Moreover, under these circumstances there can be no relation back under Rule 15(c) that could revive any claims against Kelly.

## B. *OTHER GROUNDS FOR DISMISSAL*

Because Court finds that a sufficient basis exists for dismissal of Young–Flynn's Second Amended Complaint on statute of limitations grounds, it need not address the merits of his claim. Nonetheless, given Young–Flynn's *pro se* status, the Court notes that other grounds warranting dismissal exist. Young–Flynn's Original Complaint was dismissed by Chief Judge Mukasey with leave to replead to correct the deficiencies as regards the issues of direct involvement by the named Defendants in the alleged Constitutional violations, and as to the status of the underlying criminal charge that served as the basis for Young–Flynn's arrest. The Second Amended Complaint not only fails to cure the flaws identified in the September 2, 2003 dismissal Order, but again names Kelly, who had been dismissed from the action, as a defendant.

While arguably Young–Flynn's complaint could be read to assert that Reilley, as arresting officer, was responsible for the actions that resulted in Young–Flynn's alleged wrongful arrest and imprisonment, after two amendments of the complaint, a Court Order providing some guidance concerning the deficiencies in the Original Complaint, and formal notice of the filing of Defendants' motion for summary judgment and the legal consequences of failure to respond adequately, Young–Flynn's latest pleadings remain essentially unchanged from what he asserted in the Original Complaint. He continues to provide no particulars with regard to the direct involvement of the named Defendants in the violations of the First, Fourth, Eighth and Fourteenth Amendments that the complaint describes only in the most general and conclusory terms. Nor does Young–Flynn, in either the amended pleadings, or in his responsive papers addressing the instant motion, explain the outcome of the criminal charge for which he was allegedly falsely arrested. *See Johnson v. New York*, 256 F.Supp.2d 186, 189 (S.D.N.Y.2003) (action dismissed after *pro se* plaintiff failed in subsequent amendments to comply with court directions to cure particular pleading deficiencies.)

**SO ORDERED.**